# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | James B. Zagel | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 87 | **DATE** | 5/17/2001 |
| **CASE TITLE** | VARGAS, ET AL vs. UNIVERSAL MORTGAGE, ET AL | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).
(10) ■ [Other docket entry]  The motion to dismiss is denied.
(11) ■ [For further detail see order attached to the original minute order.]

| | | |
|---|---|---|
| ☐ | No notices required, advised in open court. | |
| ☐ | No notices required. | number of notices |
| ☐ | Notices mailed by judge's staff. | MAY 21 2001 date docketed |
| ☐ | Notified counsel by telephone. | |
| ✓ | Docketing to mail notices. | docketing deputy initials |
| ☐ | Mail AO 450 form. | |
| ☐ | Copy to judge/magistrate judge. | date mailed notice |

DW  courtroom deputy's initials

FILED FOR DOCKETING
01 MAY 18 PM 4:03

Date/time received in central Clerk's Office — mailing deputy initials

Document Number: 20

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

**DOCKETED**
MAY 2 1 2001

RAFAELA VARGAS and
ARMANDO VARGAS,

    Plaintiffs,

v.

UNIVERSAL MORTGAGE
CORPORATION and COUNTRY
MORTGAGE SERVICES, INC.,

    Defendants.

No. 01 C 0087
Judge James B. Zagel

## MEMORANDUM OPINION AND ORDER

Plaintiffs Rafaela and Armando Vargas purchased a home in Palatine, Illinois with a loan from Universal Mortgage Corporation ("UMC") and with brokerage assistance from Country Mortgage Services, Inc. ("CMS"). In this putative class action they allege that certain payments made by UMC to CMS violated the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2601, *et seq*. Plaintiffs also bring state law claims for violation of the Illinois Consumer Fraud Act (815 ILCS § 505/1) and inducement of breach of fiduciary duty. Before me is UMC's motion to dismiss the complaint.

### I. RESPA

Plaintiff's RESPA claim consists of two separate allegations: (1) that UMC's payment of a yield spread premium to broker CMS constituted a "referral" or "split fee" in violation of § 2607 of RESPA; and (2) that UMC further violated RESPA by failing to disclose to plaintiffs the yield spread premium it paid to CMS prior to the closing on the mortgage loan.

## A. Legality of Yield Spread Premium

Yield spread premiums are payments made by a mortgage lender to a mortgage broker as compensation for negotiating a loan with a borrower. Typically, the rate of compensation is tied to the size of the loan, the interest rate the loan carries, and the time the loan closes. The higher the interest rate on the loan, the higher the yield spread premium for the broker. The payment of yield spread premiums is widespread in the mortgage industry, but not without controversy.

Yield spread premiums have been the target of a substantial number of federal lawsuits.[1] The typical allegation is that unscrupulous mortgage brokers finagle higher compensation from mortgage lenders by arranging a higher than necessary interest rate for the consumer. In the case at hand, plaintiffs allege that UMC's payment of a yield spread premium of $4,581.23 to broker CMS was made solely to reward CMS for negotiating a loan at an above market rate of interest in violation of RESPA.

Congress enacted RESPA to protect home buyers "from unnecessarily high settlement charges caused by certain abusive practices." See 12 U.S.C. § 2601(a). Section 8 of RESPA prohibits kickbacks, fee-splitting, and unearned fees in connection with "settlement services" involving "federally related mortgage loans." Specifically, section 8(a) provides:

> "No person shall give and no person shall accept any fee, kickback, or thing of value pursuant to any agreement or understanding, oral or otherwise, that business incident to or a part of a real estate settlement service involving a federally related mortgage loan shall be referred to any person." § 2607(a).

---

[1] See, e.g., *Marbury v. Colonial Mortgage Co.*, 2001 WL 135719 (M.D. Ala. 2001); *Schmitz v. Aegis Mortgage Corp.*, 48 F. Supp.2d 877 (D. Minn. 1999); *Potchin v. Prudential Home Mortgage Co.*, 1999 WL 1814612 (E.D.N.Y. 1999); *Hastings v. Fidelity Mortgage Decisions Corp.*, 984 F. Supp. 600 (N.D. Ill. 1997), just to name a few.

2

Even if plaintiffs establish that a referral fee has been paid, however, there is no violation of RESPA if the payment is compensation "for goods or facilities actually furnished or for services actually performed . . . so long as a disclosure is made of the existence of such an arrangement to the person being referred. . . ." 12 U.S.C. § 2607(c)(2).

How does one distinguish between brokers' fees which are prohibited kickbacks and brokers' fees which are legitimate compensation for services actually performed? On March 1, 1999, HUD issued a Policy Statement addressing the legality of yield spread premiums in the context of RESPA.[2] The Policy Statement makes it clear that HUD does not consider yield spread premiums to be *per se* illegal under RESPA; neither does it consider that all yield spread premiums are permissible. Instead, HUD recommends the application of a two-step test to determine whether lender payments to brokers fall within the ambit of § 2607. I must ask: (1) whether services were actually performed for the compensation paid, and (2) whether any payments made were reasonably related to the value of the services that were actually performed.[3] I am to look at the "total compensation" to the broker from both the borrower and the lender. If the total compensation paid to the broker is reasonably related to the value of the services actually provided, the yield spread premium is valid under RESPA.

---

[2] See Real Estate Settlement Procedures Act (RESPA) Statement of Policy 1999-1 Regarding Lender Payments to Mortgage Brokers. See 64 Fed. Reg. 10,080 (1999)(to be codified at 24 CFR, pt. 3500).

[3] Valid loan settlement services include: taking information from the borrower and filling out the application; educating the prospective buyer in the home buying and financing process; collecting financial information; initiating appraisals; initiating inspections or engineering reports, etc. See 64 Fed. Reg. at 10085 (1999).

3

In this case, plaintiff alleges that CMS provided no legitimate services, and that the sole purpose of the yield spread premium was to reward CMS for brokering a loan at an interest rate above the par interest rate. Defendant argues that the yield spread premium was compensation for services performed by CMS. This is a factual dispute. Its ultimate resolution depends on many factors, such as: the interest rate on plaintiffs' mortgage, plaintiffs' credit histories, the number and kind of settlement services CMS performed for the lender, whether CMS gave plaintiffs the opportunity to consider products from different lenders, and whether CMS would receive the same compensation regardless of which lender's products were ultimately selected.

The legality of a yield spread premium is therefore highly dependent on the facts of each case. See *Culpepper v. Inland Mortgage Corp.*, 144 F.3d 717, 718 (11th Cir. 1998). The motion to dismiss cannot be granted. If plaintiffs can show that CMS procured higher compensation from UMC by arranging a higher than necessary interest rate for Rafaela and Armando Vargas, and that CMS did not provide settlement services which were reasonably related to the $4,581.23 fee, then plaintiffs can prevail under § 2607.

**B. Failure to Disclose Claim**

Plaintiffs allege that defendants further violated RESPA by concealing the payment of the yield spread premium. CMS allegedly omitted the yield spread premium on plaintiffs' Good Faith Estimate. It allegedly listed the fee on the final Settlement Statement, but in an obscured location. Plaintiff says that full disclosure to the borrower of any fees paid by the mortgage lender to the broker is required by § 2607.

Were this allegation the sole factual basis for plaintiffs' RESPA claim, I would dismiss it. Section 2607 does not address the manner in which brokers' commissions are disclosed on the

4

Good Faith Estimate or HUD-1 forms; it merely mandates that the fees should be disclosed. Perhaps § 2607 would support a claim where there has been a glaring misstatement or a blatant concealment of fees on the GFE or HUD-1, but I need not reach this question as these are not the facts before me. At most, plaintiffs in this case allege a de minimis violation of § 2607(c)'s requirement that "a disclosure is made" of any compensation paid to the broker. Here, although the information could have been conveyed more clearly, the bottom line is that it was disclosed.

Still, the RESPA claim stands.

## II.  Illinois Consumer Fraud Act

Count II alleges a violation of the Illinois Consumer Fraud Act ("ICFA"), 815 ILCS § 505/1, based on the manner in which the HUD-1 and Good Faith Estimate disclosed CMS's commission. To show a violation of ICFA, a plaintiff must allege (1) a deceptive act or practice by defendant, (2) defendant's intent that plaintiff rely on the deception, and (3) that the deception occurred in the course of conduct involving trade or commerce. See *Connick v. Suzuki Motor Co.*, 675 N.E.2d 584 (Ill. 1996). Defendant UMC says that Count II should be dismissed against it since plaintiffs did not plead that UMC failed to disclose the yield spread premium.

True, there is no allegation that UMC affirmatively misrepresented any fee that it paid to the broker. But an omission or concealment of a material fact can violate the ICFA as well as a misrepresentation. *See id.* Here, the alleged omission was not the amount of the yield spread premium (which I have found was properly disclosed on the HUD-1), but rather the link between the yield spread premium and the interest rate on plaintiffs' loan. The complaint alleges that plaintiffs could have qualified for a lesser interest rate but that CMS arranged a mortgage with a

higher interest rate, and that UMC participated in this scheme so that it could sell a high-interest loan. Plaintiff has stated a claim under the ICFA.

### III. Inducement of Breach of Fiduciary Duty

Count IV alleges that UMC induced CMS to breach its fiduciary duty to putative class members by paying improper commissions. Under this cause of action, a third party is liable to a principal for an agent's breach if he: "(1) knowingly participated in or induced the breach of duty, and (2) knowingly accepted the benefits resulting from the breach of duty." *Hastings v. Fidelity Mortgage Decisions Corp.*, 984 F. Supp. 600, 614 (N.D.Ill.1997).

The existence of a fiduciary relationship between CMS and plaintiffs depends upon whether CMS can be considered plaintiffs' agent. A mortgage broker is not always a borrower's agent, but I will not dismiss this claim for failure to adequately plead agency. The existence of an agent/principal relationship rests on factual underpinnings, and cannot be determined on a motion to dismiss. *See id.*

Neither will I dismiss this claim on the ground that plaintiffs did not adequately allege that UMC obtained benefits from inducing the breach. Plaintiffs alleged that UMC was engaged in a scheme to convince borrowers to enter into a loan at an above-market interest rate for <u>both</u> defendants' financial benefit. If what plaintiffs say is true, UMC benefitted to the extent that it sold a loan with a higher interest rate than it otherwise could have.

The motion to dismiss is denied.

ENTER:

_____
James B. Zagel
United States District Judge

DATE: MAY 17 2001

*y*