Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | James B. Zagel | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 01 C 87 | DATE | 12/3/2001 |
| CASE TITLE | VARGAS, ET AL vs. UNIVERSAL MORTGAGE, ET AL | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

| | | |
|---|---|---|
| (1) | ☐ | Filed motion of [ use listing in "Motion" box above.] |
| (2) | ☐ | Brief in support of motion due _____. |
| (3) | ☐ | Answer brief to motion due_____. Reply to answer brief due _____. |
| (4) | ☐ | Ruling/Hearing on _____ set for _____ at _____. |
| (5) | ☐ | Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____. |
| (6) | ☐ | Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____. |
| (7) | ☐ | Trial[set for/re-set for] on _____ at _____. |
| (8) | ☐ | [Bench/Jury trial] [Hearing] held/continued to _____ at _____. |
| (9) | ☐ | This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2). |
| (10) | ■ | [Other docket entry] **Motion (36-1) to dismiss Counts II and IV is granted. Counts II and IV are dismissed. Motion (42-1) to strike affidavits is denied as moot.** |
| (11) | ■ | [For further detail see order attached to the original minute order.] |

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | DEC 0 4 2001 | 50 |
| | Mail AO 450 form. | | | |
| | Copy to judge/magistrate judge. | | | |
| DW | courtroom deputy's initials | | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION



RAFAELA VARGAS and
ARMANDO VARGAS,

Plaintiffs,

v.

UNIVERSAL MORTGAGE
CORPORATION,

Defendant.

No. 01 C 0087
Judge James B. Zagel

## MEMORANDUM OPINION AND ORDER

Plaintiffs Rafaela and Armando Vargas purchased a home in Palatine, Illinois with a loan from Universal Mortgage Corporation ("UMC") and with brokerage assistance from Country Mortgage Services, Inc. ("CMS"). They allege that certain payments – yield spread premiums ("YSPs") – made by lender UMC to broker CMS in connection with the mortgage transaction were illegal referral fees paid in violation of the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2601, *et seq.* and the Illinois Consumer Fraud Act (815 ILCS § 505/2). The facts of the case are set forth in my May 17, 2001 ruling on the motion to dismiss; I do not repeat them here.

Before me is plaintiffs' motion to certify a nationwide class of borrowers whose mortgage brokers received YSPs from the defendant. While the Complaint may have merit (and I assume it does for purposes of this motion), I will not certify the class. Even if plaintiffs can satisfy the Fed. R. Civ. P. 23(a) requirements, certification is not warranted because questions affecting individual class members predominate over questions common to the class. See Fed. R. Civ. P. 23(b)(3).



### Count I – RESPA

It is perfectly legal, under the RESPA, for a lender to pay a mortgage broker for services the broker has performed in connection with a real estate transaction. *See* 12 U.S.C. § 2607(c)(1)(C). It is *illegal*, however, for a lender to pay a broker a referral fee for sending business its way. *See* 12 U.S.C. § 2607(b).

The legality of yield spread premium payments under the RESPA has been the subject of a flood of federal lawsuits. The general consensus, and the view endorsed by HUD, is that YSPs are not *per se* illegal, but that certain unscrupulous lenders use the YSP payment improperly as a means to compensate brokers for originating loans with sky-high interest rates. Mr. and Mrs. Vargas allege that UMC is just such a lender, and that the YSP in this case was nothing more than a reward from defendant to the plaintiffs' broker for duping plaintiffs into purchasing a loan at an excessive interest rate.

The scheme works like this: UMC distributes "rate sheets" to its brokers, listing the terms of its loans and the interest rate applicable to certain classes of borrowers. If a broker secures a loan at below the "par rate" he gets no compensation from UMC. If the broker orgininates a loan at higher than par, the broker gets a YSP, which is calculated by a formula that includes the amount of the loan and the difference between the loan rate and the par rate. YSPs are <u>not</u> linked to the services performed by the broker, but rather to the extent to which the interest rate on the loan exceeded par. This fee arrangement is good for the broker, who receives his payment up front, and for the lender who can then sell the above-par loan to its investors at a higher price; but it can be very bad for the borrower – especially if he could have qualified for a loan at a lower interest rate by paying his closing fees up front.

2

It is bad for the borrower, but is it also illegal?

A 1999 HUD regulation suggests a two-part test to determine whether a YSP is an illegal referral fee or a permissible fee for service rendered.[1] I must consider, first, whether the plaintiffs' broker provided goods or services for the compensation paid, and second, whether the payments were reasonably related to the value of the goods or services actually provided. I must consider both parts of the HUD test – whether compensation was paid for a service plus "reasonableness" of the broker's total fee.[2]

As for the first prong, there is a question of fact about whether the YSP in this case should be characterized as "compensation given in exchange for goods or services received."[3] It is alleged that UMC never inquired into how much work CMS actually did in connection with the Vargas mortgage, or any other mortgage, but instead relied exclusively on a "rate sheet" to determine the amount of compensation due. Mr. and Mrs. Vargas urge me to find that the inquiry ends here – that reliance on the "rate sheet" to calculate the YSP renders the YSP an illegal referral fee, period. *See Culpepper v. Irwin Mortg. Corp.*, 253 F.3d 1324 (11th Cir. 2001). I respectfully disagree with plaintiffs' theory of liability. HUD's 2001 Policy Statement, promulgated in response to *Culpepper III*, provides that use of a rate sheet to calculate the YSP is not determinative of whether the fee was a referral fee. This makes sense.

---

[1] *See* Real Estate Settlement Procedures Act (RESPA) Statement of Policy 1999-1 Regarding Lender Payments to Mortgage Brokers, 64 Fed. Reg. 10080 (1999).

[2] *See* Real Estate Settlement Procedures Act (RESPA) Statement of Policy 2001-1: Clarification of Statement of Policy 1999-1 Regarding Lender Payments to Mortgage Brokers, and Guidance Concerning Unearned Fees Under Section 8(b), 66 Fed. Reg. 53051 (2001).

[3] I adopt *Culpepper III's* interpretation of the phrase "for goods or services received" for the reasons set forth at 253 F.3d at 1329-30.

3

Plaintiffs incorrectly assume that there is never a valid reason why a broker would receive compensation for originating an above-par loan. They say that any informed borrower who could not afford to pay closing costs would simply take out extra loans, rather than agreeing to a loan at a higher interest rate. True enough for some borrowers, but there are plenty of others who may not qualify for the extra $3000 or $4000 necessary to cover closing costs. For the borrower who has a poor credit history, the YSP can foster homeownership by allowing her to finance settlement costs through a higher interest rate.[4] In this situation the lender's use of a rate sheet to calculate the broker's fee does not, on its own, signify an illegal transaction.

I must move on to the second prong – the "reasonableness" inquiry – and this kills the motion for class certification. If liability could be established simply by the lender's reliance on the rate sheet, then very little inquiry into individual issues would be necessary. But to determine whether a broker's compensation is reasonable, I must analyze the interest rate on plaintiffs' mortgage, plaintiffs' credit histories, level of debt, employment history, whether the borrower could have taken out more in loans to cover closing costs, and other factors. The legality of the YSP is therefore highly dependent on the facts of each case, and not amenable to class resolution.

My decision to refuse class certification comports with the latest guidance from HUD:

> [I]n order to discern whether a yield spread premium was for goods, facilities, or services under the first part of the HUD test, *it is necessary to look at each transaction individually*, including examining all of the goods or facilities provided or services performed by the broker in the transaction, whether the goods, facilities or services are paid for by the borrower, the lender, or partly by both. (emphasis added).[5]

---

[4]See Real Estate Settlement Procedures Act (RESPA) Statement of Policy 2001.

[5]See 66 Fed. Reg. 53051.

4

Plaintiffs urge me to disregard the 2001 Statement on the ground that it improperly limits the RESPA. I agree that the test is confusing and not very helpful, in my view, because it allows for an easy post-hoc rationalization of any payment to a broker by a lender, so long as it is not wildly excessive or explicitly termed a "referral fee." At the same time, I believe that the test is faithful to the language of the Act and that the Act compels a case-by-case analysis of individual plaintiffs' claims every bit as much as the HUD Statement. HUD's "reasonableness requirement" was not made out of whole cloth; it is implicit in § 2607(c) which authorizes compensation for "services actually performed."

Plaintiffs observe that HUD's policy statements effectively disallow borrowers from ever challenging broker premiums under § 8 as a class. *See Golon v. Ohio Savings Bank*, 1999 WL 965593 (N.D. Ill. 1999). This may be the case, but as Judge Pallmeyer has observed, alternatives besides a class action may afford relief. RESPA allows for an award of treble damages and attorneys' fees and costs. *See id.* Moreover, a declaratory judgment finding that UMC's policy violated § 8 may deter the practice and bring relief to others besides the individual plaintiffs.

**Count II – RESPA / Count IV – Consumer Fraud Act**

I do not reach the motion for certification as it applies to Count II because I am granting the motion to dismiss this claim. Count II alleges that in paying the YSP, defendant violated a Federal Housing Administration ("FHA") directive that limits the amount of a broker's "origination fee" to one percent of the original principal amount of the mortgage. *See* FHA's Mortgagee's Handbook, Chapter 5 § 5-3; *see also* 24 C.F.R. § 203.27(a)(2)(i)).

The claim is invalid on its face. The broker's origination fee in this case **was** under 1% – it was 0.98%. Plaintiff would have me aggregate the origination fee and the YSP, which together

5

constituted about 4% of the loan in question. I will not aggregate the payments. Plaintiffs' argument is contrary to the plain language of the directive, which states:

> "Customary and reasonable fees and charges that may be collected *from the borrower* by the mortgagee include the following closing costs . . .Origination fee: One percent of the original principal amount of the mortgage . . .."[6]

The directive puts an upper limit on "origination fee[s]" which are paid by the borrower to the broker; it says nothing about YSPs which are paid by the lender. *See Bjustrom v. Trust One Mortgage*, No. C00-1166P (W.D. Wash. October 26, 2001). Moreover, the payment of YSPs is widespread in the industry. If the FHA meant to aggregate YSPs and loan origination fees under its 1% cap, it would have said so.

To the extent that plaintiffs argue that the 4% of the loan is unreasonable under RESPA because it was not compensation for services rendered, this claim is duplicative of Count I. Since Mr. and Mrs. Vargas have not stated a claim under Count II, the motion to certify a class based on Count II is denied.

It follows that Count IV must also fail as pleaded. The Consumer Fraud Act claim is based upon the assumption that YSPs in excess of 1% of the loan are prohibited. Since I have found that the defendants did not violate the FHA restriction, there can be no claim for failure "to disclose to plaintiffs that the 1% FHA restriction was being evaded." (Compl. ¶ 63).

---

[6] Similarly, 24 C.F.R. § 203.27(a)(2)(i) provides: "The mortgagee may collect from the mortgagor the following charges, fees or discounts . . . [a] charge to compensate the mortgagee for expenses incurred in originating and closing the loan, the charge not to exceed . . .$20 dollars or one percent of the original principal amount of the mortgage . . . whichever is the greater . . .."

### Count V – Inducement of Breach of Fiduciary Duty

Since liability will not be based on the uniform use of a rate sheet to calculate the YSP, but rather on analysis of each individual mortgage transaction, plaintiffs' remaining claim is no more amenable to class resolution than the RESPA claim.

### Conclusion

The motion for class certification is denied. The motion to dismiss Count II and Count IV is granted. The motion to strike affidavits is denied as moot.

ENTER:

James B. Zagel
United States District Judge

DATE: December 3, 2001